IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHARLES BROWN, *et al.* | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No.: RDB 06-524 |
| DAVID HOVATTER, *et al.* | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

The Maryland Morticians Act ("the Act" or "the Morticians Act"), Md. Code Ann., Health Occ. §§ 7-101-602 limits the ownership and operation of funeral homes to the following persons: licensed morticians, licensed funeral directors, surviving spouses of deceased morticians or funeral directors, executors of estates of deceased morticians, and corporations that held a license as of June 1, 1945.  These restrictions are challenged in a Complaint for declaratory and injunctive relief filed by Charles Brown, Joseph B. Jenkins, III, John Armiger, Brian Chisolm, and Gail Manuel (collectively, "Plaintiffs") against David Hovatter, in his official capacity as President of the Maryland State Board of Morticians, Faye Peterson, Michael Ruck, Sr., Gladys Sewell, Donald V. Borgwardt, Marshall Jones, Jr., Michael Kruger, Brian Haight, Robert Bradshaw, Jeffery Pope, and Vernon Strayhorn, Sr., in their official capacities as Members of the Maryland State Board of Morticians (collectively, "Defendants").  Plaintiffs assert that the Act's restrictions on ownership and operation of funeral homes violate the Equal Protection, Due Process, Privileges and Immunities, and Commerce Clauses of the United States Constitution.

Currently pending is Defendants' Motion to Dismiss, which contends that Plaintiffs lack

standing and that Plaintiffs' Complaint fails to state a claim upon which relief can be granted. Among other arguments, Defendants maintain that there is no basis for disturbing the Maryland General Assembly's decision to regulate ownership of the funeral home business for purposes of protecting the health and welfare of the public and preserving existing investments or values. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 & 1343. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons that follow, Defendants' Motion to Dismiss is GRANTED only with respect to Count Four and is DENIED with respect to the remaining Counts of the Complaint.

BACKGROUND

The Maryland Morticians Act is set forth in Title 7 of the Health Occupations Article of the Maryland Annotated Code. *See* Md. Code Ann., Health Occ. §§ 7-101-602. The Morticians Act establishes a comprehensive scheme for, *inter alia*, the ownership and operation of funeral homes. That scheme is enforced by the State Board of Morticians. *Id*. at §§ 7-201-205. The stated purpose of the Act "is to protect the health and welfare of the public." *Id*. at § 7-103.

The Morticians Act requires that a funeral home must be licensed by the State Board of Morticians before commencing operations:

> A funeral establishment shall be licensed by the Board *before* the establishment may be used for the preparation of the remains, viewing, and conducting of services.

Md. Health Occ. Code Ann. § 7-310 (a)(1) (emphasis added). The Act limits who may obtain a "funeral establishment license" by requiring that every application for such a license be signed by a "licensed individual" who is also "the owner or co-owner of the establishment to be licensed." *Id*. at § 7-310(b)(2). A person is a "licensed individual" under the Morticians Act if he is (1) a licensed mortician, *id*. at § 7-302, (2) a licensed funeral director, *id*. at § 7-307, (3) the

surviving spouse of a deceased mortician or funeral director, *id*. at § 7-308, or (4) the executor of the estate of a deceased mortician, *id*. at § 7-308.1.

The Morticians Act generally prohibits corporations from owning and operating funeral homes:

> Except as otherwise provided by law, a corporation may not operate a mortuary science business and the Board may not issue a license to or list any corporation as licensed to operate a mortuary science business.

*Id*. at § 7-309(a); *see also id*. at § 7-101(q) (defining the phrase "[p]ractice mortuary science" as "[t]o operate a funeral establishment"). However, corporations that held a license as of June 1, 1945 are exempt from the Act's general prohibition on corporate ownership:

> The Board may renew only the license of a corporation that:
>
> (1) On June 1, 1945, held a license issued by this State;
> (2) Has been renewed continuously since that date;
> (3) Submits an application on a form required by the Board; and
> (4) Pays a fee set by the Board.

*Id.* at § 7-309(b). Plaintiffs allege that 58 corporations maintain a corporation license under the above "grandfather clause," and that these licenses routinely trade on an informal market for an approximate price of $250,000 per license. (*See* Compl. ¶¶ 25-26.)

Plaintiffs consist of five individuals: Charles Brown ("Brown"), Joseph B. Jenkins, III ("Jenkins"), John Armiger ("Armiger"), Brian Chisolm ("Chisolm"), and Gail Manuel ("Manuel"). Three Plaintiffs—Brown, Manuel, and Armiger—are cemetery owners who cannot own a funeral home because none of them are licensed morticians, licensed funeral directors, the surviving spouse of a deceased mortician or funeral director, or the executor of the estate of a deceased mortician. (*See* Compl. ¶¶ 4 & 6-7.) The remaining Plaintiffs—Jenkins and Chisolm—are licensed funeral directors who cannot own a funeral home through a corporation

3

pursuant to § 7-309 of the Act. (*Id*. at ¶¶ 5 & 8.) Plaintiffs Brown, Jenkins, Manuel, and Armiger are residents of the State of Maryland. (*Id*. at ¶¶ 4-7.) Plaintiff Chisolm is a resident of the State of Florida. (*Id*. at ¶ 8.)

## STANDARD OF REVIEW

Defendants seeks to dismiss Plaintiffs' action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. As the legal sufficiency of the complaint is challenged under a Rule 12(b)(6) motion, the court assumes "the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *Eastern Shore Mkts. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). A Rule 12(b)(6) motion to dismiss "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325 (4th Cir. 2001); *see also Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). Furthermore, the "Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Rather, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal*, 248 F.3d at 325-26; *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)). In reviewing the complaint, the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman*, 417 F.3d at 420*; Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997); *Mylan Labs., Inc. v. Matkari*,

7 F.3d 1130, 1134 (4th Cir. 1993).

## DISCUSSION

**I.      Complaint.**

Plaintiffs' Complaint asserts six causes of action.  In Count One, Plaintiffs Brown, Manuel, and Armiger contend that the Act's provision that licensed funeral directors may own and operate funeral homes violates the Equal Protection Clause of the Fourteenth Amendment. (*See* Compl. ¶¶ 46-53.)  In Count Two, all five Plaintiffs assert that the Act's prohibition on corporations owning funeral homes also violates the Equal Protection Clause.  (*Id.* at ¶¶ 54-60.) In Count Three, Plaintiffs Brown, Manuel, and Armiger maintain that the Act's restrictions on ownership of funeral homes deprives them of their right to earn an honest living in violation of the Due Process Clause of the Fourteenth Amendment.  (*Id.* at ¶¶ 61-64.)  In Count Four, Plaintiffs Brown, Manuel, and Armiger allege that the Morticians Act violates the Privileges and Immunities Clause of the Fourteenth Amendment by imposing arbitrary and unreasonable restrictions on the ownership of funeral homes.  (*Id.* at ¶¶ 65-68.)  In Count Five, Plaintiff Chisolm asserts that the Act's restrictions on corporate ownership of funeral homes unduly burdens interstate commerce in violation of the Commerce Clause.  (*Id.* at ¶¶ 69-73.)  Finally, in Count Six, all five Plaintiffs request a Declaratory Judgment that the Act violates their rights under the United States Constitution.  (*Id.* at ¶¶ 74-75.)

**II.     Standing.**

As a preliminary matter, this Court must address Defendants' contention that Plaintiffs lack standing to bring this action.  Standing is one aspect of the "case or controversy" limitation placed on the "judicial power" of the United States under Article III of the U.S. Constitution.  As the Supreme Court has explained:

> [A]t an irreducible minimum, Article III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision. In this manner does Art. III limit the federal judicial power to those disputes which confine federal courts to a role consistent with a system of separated powers and which are traditionally thought to be capable of resolution through the judicial process.

*Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 472 (1982) (citations and internal quotation marks omitted); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992).

To establish standing, a federal complainant must demonstrate that: (1) he has suffered an actual or threatened injury; (2) a causal connection exists between the injury complained of and the challenged action; and (3) the injury can be redressed by a favorable decision. *See*, *e.g.*, *Burke v. City of Charleston*, 139 F.3d 401, 405 (4th Cir. 1998). In this case, it is beyond reasonable dispute that a causal connection exists between the types of injuries at issue here—*i.e.*, the inability to own and operate a funeral home as an individual or through a corporation—and the restrictions imposed on ownership and operation of funeral homes by the Morticians Act. Similarly, there is no reasonable dispute that these injuries would be redressed by a favorable decision of this Court. As a result, the matter of standing depends upon whether each Plaintiff has satisfied his burden of demonstrating that he has suffered an actual or threatened injury. *See Marshall v. Meadows*, 105 F.3d 904, 906 (4th Cir. 1997) (burden of showing standing rests with the party invoking federal jurisdiction).

To establish "injury in fact," a plaintiff must show that he suffered "an invasion of a legally protected interest which is concrete and particularized, as well as actual or imminent." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir. 2000)

(en banc).  The injury cannot be "conjectural or hypothetical."  *Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 320 (4th Cir. 2002) (citations and internal quotation marks omitted).  Here, Plaintiffs Brown, Manuel, and Armiger claim the injury of not being able to earn a living by owning and operating a funeral home.  (*See* Compl. ¶¶ 46-53 & 61-68.)  Each Plaintiff asserts the injury of not being able to earn a living by owning and operating a funeral home through a corporation.  (*Id*. at ¶¶ 54-60 & 69-73.)  Plaintiffs identify the legally protected interest at issue as the right to earn a living free from unreasonable government interferences.  (*See* Pls' Opp. pp. 5-7.)

Defendants argue that Plaintiffs have not suffered any injuries. For example, Defendants suggest that "[b]ecause both Chisolm and Jenkins may form corporations and build funeral homes under the current law, neither has suffered any injury."  (Defs' Mem. p. 15.)  Defendants also assert that Plaintiffs Brown, Manuel, and Armiger lack standing because "[n]othing in the Act or any other section of Maryland law prevents any of these plaintiffs from owning a funeral home."  (*Id*. at p. 15.)  The problem with these arguments is that they rest on the faulty assumption that Plaintiffs are complaining about their inability to own a *building* from which a funeral home business could operate, as opposed to their inability to own and operate a *funeral home business*.  This assumption is not supported by a fair reading of Plaintiffs' Complaint.[1]  Each of the individual Plaintiffs, moreover, has alleged that he or she wants to own and operate a

---

[1] (*See*, *e.g.*, Compl. ¶ 41 ("Plaintiff Charles Brown . . . has not been able to own the *funeral home business* there.") (emphasis added); ¶ 42 ("But for the restrictions in the Maryland Morticians Act, Mr. Jenkins would immediately form a corporation for the purposes of owning a funeral home and implement his plan to open a *cemetary/funeral home combination*.") (emphasis added); ¶ 45 ("Mr. Chisolm's inability to own a funeral home through a corporation is a serious impediment to his ability to *conduct business activities* in Maryland.") (emphasis added); ¶¶ 46-53 (asserting that certain Plaintiffs cannot operate funeral homes under the Morticians Act); ¶¶ 54-60 (asserting that Plaintiffs cannot operate funeral homes through corporations).)

funeral home business as an individual or through a corporation. (*See*, *e.g.*, Compl. ¶¶ 4-8.) There is no reasonable dispute that Plaintiffs' inability to own or operate such funeral home businesses is directly attributable to the provisions of the Morticians Act identified in the Complaint and discussed by the parties in their moving papers. (*See*, *e.g.*, Defs' Mem. Ex. 1.) Based on these considerations, this Court concludes that the injuries asserted by Plaintiffs are concrete, particularized, and imminent. Accordingly, this Court finds that all five Plaintiffs have standing in this matter.

### III.     Motion to Dismiss.

#### A.     Privileges and Immunities Clause.

The Privileges and Immunities Clause of the Fourteenth Amendment provides:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States.

U.S. Const., amend. XIV, § 1. In this case, Plaintiffs Brown, Manuel, and Armiger claim that the State of Maryland has deprived them of their "right to earn an honest living", which they contend is one of the "Privileges or Immunities of citizenship." (Compl. ¶ 67.)

In the *Slaughter-House Cases*, 83 U.S. (16 Wall.) 36 (1872), a closely divided Supreme Court upheld a Louisiana law that required New Orleans butchers to perform their work at a privately-owned slaughtering facility. The butchers contended that the statute violated their right to earn a living under the Privileges and Immunities Clause of the recently enacted Fourteenth Amendment. This argument was rejected on two grounds. First, the Supreme Court held that the Privileges and Immunities Clause only obligates States to protect certain limited rights of national citizenship. *Id*. at 76. The Court did not find that the right to earn a living was among

those rights. *Id*. at 79-80.  Second, the Supreme Court disregarded the contention that the Privileges and Immunities Clause provides "protection to the citizen of a State against the legislative power of his own State." *Id*. at 74.  Since the *Slaughter-House Cases*, courts have rejected causes of action brought under the Privileges and Immunities Clause of the Fourteenth Amendment where a plaintiff asserts that this Clause protects his right to earn a living or contends that his rights under this Clause have been violated by actions of his own state.  *See, e.g.*, *Powers v. Harris*, 379 F.3d 1208, 1214 (10th Cir. 2004), *cert. denied*, 544 U.S. 920 (2005); *Meadows v. Odom*, 356 F. Supp. 2d 639, 643-44 (M.D. La. 2005); *Merrifield v. Lockyer*, 388 F. Supp. 2d 1051, 1061 (N.D. Cal. 2005); *Craigmiles v. Giles*, 110 F. Supp. 2d 658, 665-66 (E.D. Tenn. 2000), *aff'd on other grounds*, 312 F.3d 220 (6th Cir. 2002).[2]

In this case, Plaintiffs' cause of action based on the Privileges and Immunities Clause of the Fourteenth Amendment is indistinguishable from the claim rejected by the Supreme Court in the *Slaughter-House Cases*.  First, only Plaintiffs Brown, Manuel, and Armiger assert a claim based on the Privileges and Immunities Clause.  (*See* Compl. ¶¶ 65-68.)  Second, these Plaintiffs contend that the Privileges and Immunities Clause protects their right to earn an honest living. (*Id*. at ¶ 67.)  Third, each of these Plaintiffs are residents of the State of Maryland.[3]  (*Id*. at ¶¶ 4,

---

[2] *See also Goldfarb v. Supreme Court of Virginia*, 766 F.2d 859, 864-65 (4th Cir. 1985) ("Goldfarb may not rely directly on the decisions because he is a Virginia resident, and the Privileges and Immunities Clause provides "no security for the citizen of the State in which [the privileges] were claimed.") (quoting the *Slaughter-House Cases*, 83 U.S. at 77); *Marusic Liquors, Inc. v. Daley*, 55 F.3d 258, 261 (7th Cir. 1995) ("Not since the *Slaughter-House Cases* has it been seriously maintained that the fourteenth amendment curtails the states' power to restrict competition in business-if they choose, by establishing and limiting systems of occupational licensure.  The *Slaughter-House Cases*, dispatch any argument that the privileges and immunities clause entitled persons to conduct businesses free of regulation (there, of exclusion, for the state set up a monopoly).").

[3] Although the Privileges and Immunities Clause refers to "Citizens," the Supreme Court has found that "the terms 'citizen' and 'resident' are 'essentially interchangeable'. . . for

9

6, & 7.)  Finally, as Plaintiffs candidly acknowledge in their opposition papers, this cause of action falls squarely within the holding of the *Slaughter-House Cases* discussed above.[4]  (*See* Pls' Opp. p. 17.)  Accordingly, Defendants' Motion to Dismiss is GRANTED with respect to Plaintiffs' claim under the Privileges and Immunities Clause (Count Four).

### B.     Equal Protection and Due Process Clauses.

Plaintiffs' claims based on the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution are governed by the same standard, *i.e.*, whether the Act's restrictions on ownership of funeral homes are rationally related to a legitimate state interest.[5]  *See*, *e.g.*, *Guardian Plans Inc. v. Teague*, 870 F.2d 123, 125 n.2 (4th Cir. 1989) ("For analytical purposes, we will treat appellants' due process and equal protection challenges as one.  We do this because, when reviewing economic regulations, the legal standard—rationally related to a legitimate state interest—is the same.") (citation omitted).  (*See also* Defs' Mem. p. 7 (applying rational basis scrutiny); Pls' Opp. p. 6 (same).)

Economic regulations that neither create a suspect classification nor infringe upon fundamental interests are presumed constitutional and must be upheld as long as they are

---

purposes of analysis of most cases under the Privileges and Immunities Clause."  *Hicklin v. Orbeck*, 437 U.S. 518, 524, n.8 (1978) (quoting *Austin v. New Hampshire*, 420 U.S. 656, 662, n.8 (1975)).

[4]     Plaintiffs suggest that courts are interested in "reviving" the Privileges and Immunities Clause "'in an appropriate case.'"  (Pls' Opp. p. 16 (quoting *Saenz v. Roe*, 526 U.S. 489, 527-28 (1999) (Thomas, J., dissenting).)  This argument does not constitute sufficient grounds, however, for ignoring established Supreme Court precedent.  *See Hohn v. United States*, 524 U.S. 236, 252-53 (1998) ("Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing validity.").

[5]     Amend. XIV, § 1, of the United States Constitution provides that "[n]or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

rationally related to a legitimate state interest.  *See*, *e.g.*, *FCC v. Beach Comm's, Inc.*, 508 U.S. 307, 313 (1993)  "The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record."  *Heller v. Doe*, 509 U.S. 312, 320-321 (1993) (internal quotation marks and citation omitted).  In addition, it is "'constitutionally irrelevant [what] reasoning in fact underlay the legislative decision.'"  *Railroad Retirement Bd. v. Fritz*, 449 U.S. 166, 179 (1980) (quoting *Flemming v. Nestor*, 363 U.S. 603, 612 (1960)).  "In other words, a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data."  *Beach Commc'ns, Inc.*, 508 U.S. at 313 (citations omitted).

In this case, two provisions of the Morticians Act are challenged on Equal Protection and Due Process grounds.  First, the requirement that owners of funeral homes be licensed morticians is challenged in light of "exemptions" made for certain corporations, surviving spouses of deceased morticians, and executors of estates of deceased morticians.[6]  (Pls' Opp. p. 13.)  Second, the prohibition on the ownership of funeral homes by corporations is challenged in light of the exception made for corporations that held a license to operate a funeral establishment as of June 1, 1945.[7]

---

[6] (*See* Compl. ¶ 52 ("Plaintiffs Brown, Manuel, and Armiger have been denied equal protection of the law because there is no rational reason why they are not permitted to own a funeral home when the same right has been extended to certain privileged corporations, the surviving spouses of deceased funeral directors, and the executors of deceased funeral directors' estates.").)

[7] (*See* Compl. ¶ 59 ("Plaintiffs have been denied equal protection of the law because there is no rational reason why they are not permitted to own a funeral home through a corporation when fifty-eight other corporations are permitted to do so.").)

**(1)     Licensed Morticians.**

This Court will deny Defendants' motion with respect to Plaintiffs' challenge to the Mortician Act's provision that only licensed morticians are authorized to own funeral homes.[8] (*See* Compl. ¶ 48.)  First, Defendants do not address all aspects of Plaintiffs' causes of action.  For example, Defendants interpret Plaintiffs' challenge as limited to a single issue: whether it is appropriate to restrict owners of funeral homes to licensed morticians.[9]  Plaintiffs present their arguments, however, as broader in scope: whether it is appropriate to restrict owners of funeral homes to licensed morticians *in light of exceptions made for non-morticians*.[10]  Second, Defendants do not adequately support their argument that the Morticians Act survives rational basis scrutiny.  Defendants appear to rely on the principle that "the means chosen by the States to protect [legitimate] interests are often not an exact fit, and in some instances, may even 'exact a needless, wasteful requirement.'" (Defs' Reply p. 3 (quoting *Williamson v. Lee Optical*, 348 U.S. 483, 487 (1955)).)  However, Defendants neither identify which provisions of the Morticians Act

---

[8] Although Count One of Plaintiffs' Complaint focuses on licensed *funeral directors*, the relevant portion of Plaintiffs' opposition papers focuses on licensed *morticians*. (*Compare* Compl. ¶ 49 ("The Act also provides, however, that two distinct categories of non-licensed *funeral directors* are authorized to own funeral homes . . . .") (emphasis added) *with* Pls' Opp. p. 13 ("Defendants do not explain how *non-mortician-owned* funeral homes are supposed to endanger public health, safety, or welfare, nor do they explain what it is about *licensed morticians* that specially equips them to protect the public from those harms.") (emphasis added).)  For purposes of this Opinion, this Court has adopted the approach taken by the parties in their moving papers, which focus on morticians, not funeral directors.

[9] (*See*, *e.g.*, Defs' Mem. p. 11 ("In essence, the plaintiffs disagree with the Maryland General Assembly's judgment that funeral establishments should be owned by *licensed morticians*.") (emphasis added).)

[10] (*See*, *e.g.*, Pls' Opp. p. 8 ("The government must explain, in other words, how the stated end (*e.g.*, public health) is rationally related to the particular means chosen to address it (limiting funeral home ownership to licensed morticians *and variously specially exempted corporations and individuals*.") (emphasis added); *see also* Compl. ¶¶ 49-51.)

constitute an inexact fit nor explain why such provisions are nevertheless rationally related to a legitimate interest. It is possible that Defendants intend this argument to account for what Plaintiffs characterize as irrational "exceptions" to the Act's restrictions on ownership of funeral homes. However, the resolution of these issues must await further discovery and analysis. Accordingly, Defendants' Motion to Dismiss is DENIED with respect to Plaintiffs Brown, Manuel, and Armiger's challenges to the Act's licensure requirements under the Equal Protection and Due Process Clauses (Counts One and Three).

### (2)     Corporations Owning Funeral Homes.

Corporations that operate funeral homes in Maryland do so pursuant to the following "grandfather clause":

> The Board may renew only the license of a corporation that:
>
> (1)     On June 1, 1945, held a license issued by this State;
> (2)     Has been renewed continuously since that date;
> (3)     Submits an application on a form required by the Board; and
> (4)     Pays a fee set by the Board.

Md. Code Ann., Health Occ. § 7-309(b); *see also id*. at § 7-309(a) ("Except as otherwise provided by law, a corporation may not operate a mortuary science business and the Board may not issue a license to or list any corporation as licensed to operate a mortuary science business."). Plaintiffs assert that the above grandfather clause violates the Equal Protection and Due Process Clauses because "there is no rational reason why they are not permitted to own a funeral home through a corporation when fifty-eight other corporations are permitted to do so." (Compl. ¶ 59.) Defendants respond that the Act's exception for certain corporations is rationally related to legitimate state interests that were previously identified by the Court of Appeals of Maryland:

> One of the two kinds of corporations which are permitted under Sec.

> 360 is established under a grandfather clause; the other was designed to preserve the assets and going concern value of the business of men engaged in the service of the country during war. The exceptions in favor of each of these types of corporations had the purpose of preserving existing investments or values.

*Brooks v. State Board of Funeral Dir. & Embalm.*, 195 A.2d 728, 737 (Md. 1963). (*See also* Defs' Mem. p. 11 (contending that the reasons identified in the *Brooks* decision "are equally valid today").)

Although grandfather clauses do not necessarily violate the Equal Protection or Due Process Clauses, courts have taken pause when the exemption granted under a grandfather clause is *permanent* in nature. For example, the United States Court of Appeals for the Third Circuit noted that:

> While the rate scheme of Resolution 74-6 might conceivably be constitutionally permissible if the favored treatment for established users were merely *temporary*, one striking characteristic of the exemption as granted is its *permanency*. One theme of equal protection law is that a legislature may undertake reforms one step at a time, and that a reviewing court ordinarily should not overrule a legislative decision simply because the challenged provision adopts a gradual approach to solving a problem. . . . Resolution 74-6 grants a permanent exemption for pre-1961 users to the extent of their "legal entitlement." Nothing in the record suggests that the Commission some day will alter this exemption.

*Delaware River Basin Com'n v. Bucks County, Etc.*, 641 F.2d 1087, 1098-99 (3d Cir. 1981) (emphasis added). After remanding the case for purposes of determining whether a justifying rationale for the grandfather clause exists, the district court addressed the same problem:

> With respect to the second concern voiced by the Court of Appeals, it is clear that the Compact exemption from water-use charges for pre-1961 uses, as implemented by the DRBC Resolution, is not wholly permanent. By prohibiting the transfer of free water use rights, DRBC has made it likely that some significant number of pre-1961 uses will not be perpetually exempt since the initial user may go out of existence and be replaced by a new user which will not be permitted to acquire the former entitlement.

*Delaware River Basin Com'n v. Bucks County, Etc.*, 545 F. Supp. 138, 147 (D.C. Pa. 1982); *see also New Orleans v. Dukes*, 427 U.S. 297 (1976) (upholding grandfather clause in a New Orleans ordinance that exempted "vendors who have continuously operated the same business within the [French Quarter] . . . for eight or more years prior to January 1, 1972" from ordinance's prohibition against vendors' selling of foodstuffs from pushcarts in the French Quarter).

In this case, the grandfather clause in the Morticians Act appears to grant exemptions that are permanent in nature. Defendants do not suggest otherwise in their papers, (*see* Defs' Mem. pp. 7-12; Reply pp. 5-7), and nothing in the Morticians Act appears to limit the extent of the grandfather clause's grant of immunity, *see* Md. Code Ann., Health Occ. § 7-309. In addition, Plaintiffs indicate that discovery may reveal that the 58 corporation licenses protected under the grandfather clause are "regularly bought and sold on an informal market." (Compl. ¶ 26.) If such facts are revealed during discovery, Plaintiffs will no doubt argue that this grandfather clause no longer serves the reliance interests identified by Defendant, *i.e.*, protecting pre-1937 or 1945 holders of corporation licenses. Based on these and other considerations, this Court cannot conclude at this early stage in the litigation that the grandfather clause in the Morticians Act is rationally related to a legitimate state interest. Accordingly, Defendants' Motion to Dismiss is DENIED with respect to Plaintiffs challenges to the Act's grandfather clause under the Equal Protection Clause (Count Two).

    **C.**    **Commerce Clause Challenge.**

Although it appears to do nothing more than grant to Congress the power "[t]o regulate Commerce . . . among the several States. . . ," Art. I, § 8, cl. 3, it is well-established that the Commerce Clause prohibits States from taking certain actions with respect to interstate

15

commerce. First, a state law that discriminates against interstate commerce facially, in its practical effect, or in its purpose is virtually *per se* invalid. *See*, *e.g.*, *Wyoming v. Oklahoma*, 502 U.S. 437, 454-55 (1992). Second, a statute that regulates evenhandedly and only indirectly affects interstate commerce is valid unless the burdens on commerce are "clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

In this case, Plaintiff Chisolm claims that the restriction on corporate ownership of funeral homes under the Morticians Act discriminates against interstate commerce in practical effect and purpose.[11] With respect to discriminatory purpose, Chisolm proffers that a "major purpose" behind the Act's restriction on corporate ownership is to prevent out-of-state corporations from entering Maryland and competing with family owned funeral homes. (Pls' Opp. p. 19.) Chisolm further contends that "a cartel of in-state funeral homes" has "vigorously resisted" efforts to open Maryland's funeral industry to out-of-state entities. (*Id*.) Based on these showings, Chisolm contends that it is "reasonable to conclude" that a discriminatory motive fueled the enactment in 1937 of the prohibition on corporate ownership and continues to fuel it today. (*Id*.)

With respect to discriminatory effect, Chisolm contends that the Act "effectively closes the local funeral home market—and therefore discriminates against interstate commerce—in at least three important ways." (*Id*. at p. 20.) First, Chisolm alleges that all 58 of the exempted corporations are Maryland corporations. (*Id*.) Second, Chisolm contends that requiring foreign corporations to buy one of 58 Maryland corporations in order to enter the funeral home market in Maryland is "tantamount to an unconstitutional residency requirement." (*Id*.) Third, Chisolm

---

[11] Chisolm concedes that the Morticians Act does not facially discriminate against interstate commerce. (*See* Pls' Opp. p. 19.)

16

argues that it is plausible to infer from the fact that only 26% of the funeral homes in Maryland are owned by corporations that the Morticians Act has the practical effect of excluding interstate commerce in funeral home services.[12]  (*Id*. at p. 21.)

Finally, Plaintiff Chisolm suggests that restrictions on corporate ownership of funeral homes unduly burdens interstate commerce in relation to any local benefits secured by the Act. (*Id*. at pp. 21-23 (citing *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970).)  Chisolm argues that the first part of the *Pike* analysis—determining whether the Act's grandfather clause serves a legitimate local purpose—cannot be conducted at this stage of the litigation because Defendants fail to explain how the legitimate local purposes at issue are secured by the Act.  (*Id*. at p. 22.) Chisolm also suggests that one component of the *Pike* analysis—whether in-state interests actively seek to protect the burdensome law—is satisfied in this case.  (*Id*. (quoting *Yamaha Motor Corp. v. Jim's Motorcycle*, 401 F.3d 560, 573 (4th Cir. 2005).)

Defendants respond to these arguments as follows.  First, Defendants argue that Chisolm's contention that the Act imposes a residency requirement is "absurd" because Chisolm is a resident of Florida who owns a funeral home in Maryland that is an incorporated entity.  (*See* Defs' Reply p. 8 n.3 ("Mr. Chisolm owns Brian T. Chisolm Funeral Services of Dulaney Valley, P.A.").)  Second, Defendants contend that "[b]ecause nothing in the Maryland Morticians Act

---

[12]   The parties do not discuss the significance, if any, of limitations placed on the scope of a corporation license under the Morticians Act.  For example, the Act requires that a corporation license "authorizes a corporation to operate a mortuary science business only if any practice of mortuary science that is conducted for the corporation is practiced by a licensed individual." Md. Code Ann., Health Occ. § 7-309(d).  In addition, "[a] corporation may not operate a branch funeral establishment unless the branch funeral establishment was in operation on or before October 1, 1964." *Id*. at § 7-309(e); *see also Brooks*, 195 A.2d at 738 (Noting that the Act's predecessor statute "denies to preexisting corporations and to servicemen's corporations the right to establish branches, thus limiting competitive advantages as against individuals or partnerships which corporations might otherwise enjoy.").

imposes a greater burden on out-of-state business than it does on similarly situated Maryland business, this Court should reject the contention that the Act discriminates against interstate commerce in its effect." (*Id*. at p. 9.) Third, Defendants maintain that Chisolm has "alleged no facts from which this Court could conclude that the Maryland Morticians Act has a discriminatory purpose." (*Id*.) Finally, Defendants reject Chisolm's contention that the Act unduly burdens interstate commerce by pointing out that "a nondiscriminatory statute with only an incidental effect on commerce 'will be upheld unless the burden imposed on . . . commerce is clearly excessive in relation to the putative local benefits.'" (*Id*. at pp. 9-10 (quoting *Yamaha Motor Corp.*, 401 F.3d at 567.)

       This Court will deny Defendants' Motion to Dismiss with respect to Plaintiff Chisolm's dormant Commerce Clause challenge to the Act's restriction on corporate ownership of funeral homes. Discovery is needed to determine whether Chisolm's arguments are sufficiently supported by fact. For example, this Court has no basis for assessing Chisolm's contention that in-state funeral home operators have resisted efforts to open Maryland's funeral industry to out-of-state entities. Additional information regarding the informal market that allegedly exists for purposes of trading the 58 corporation licenses may also impact this Court's dormant Commerce Clause analysis. In sum, after reviewing the arguments presented by the parties, this Court is simply unable to conclude at this stage that it is certain that Chisolm cannot prove any set of facts in support of his claim that would entitle him to relief. *Cf. Migdal*, 248 F.3d at 420. Accordingly, Defendants' Motion to Dismiss is DENIED with respect to Plaintiff Chisolm's dormant Commerce Clause claim (Count Five).

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED with respect to Count Four and DENIED with respect to all remaining Counts. A separate Order follows.


Dated: October 11, 2006                     /s/
                                            Richard D. Bennett
                                            United States District Judge